UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LOUIS N. LOWE,

       Plaintiff,

                                 Civil Action 2:14-cv-535
   v.                           Judge George C. Smith
                                 Magistrate Judge Elizabeth P. Deavers

WARDEN JOHN DOE, *et al.*,

       Defendants.

### REPORT AND RECOMMENDATION

      This matter is before the Court for consideration of Plaintiff's Motion for Summary Judgment (ECF No. 50), Defendant's Memorandum in Opposition (ECF No. 53), Plaintiff's Reply (ECF No. 59), Defendant's Second Motion for Summary Judgment (ECF No. 52), and Plaintiff's Memorandum in Opposition (ECF No. 59.).  For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and that Defendants' Motion for Summary Judgment be **GRANTED**.  It is further **RECOMMENDED** that Plaintiff's claims for declaratory relief be **DISMISSED** as **MOOT** and his claims for monetary relief be **DISMISSED** for failure to state a claim upon which relief may be granted.

### I. BACKGROUND

      Plaintiff, a prison inmate under the custody and control of the Ohio Department of Rehabilitation and Correction ("ODRC") at the Noble Correctional Institution, was previously incarcerated at the Correctional Reception Center ("CRC") when the events in question took place.  (ECF No. 50 at 2.)  Plaintiff initiated this 42 U.S.C. § 1983 case on June 6, 2014, alleging

that Defendants deprived him of his right to practice Rastafarianism by forcing him to cut his dreadlocks, in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (ECF No. 3 at 5-6.) It is not disputed that Defendants required Plaintiff, upon his admission to the CRC, to have his dreadlocks cut pursuant to ODRC grooming regulations. (ECF No. 52 at 2.) Plaintiff is seeking compensatory damages, punitive damages, and declaratory relief. (ECF No. 3 at 6.) On March 27, 2015, the Court adopted the Magistrate Judge's Report and Recommendation, dismissing Plaintiff's claims against Defendant Oppy, leaving only Defendant Lewis as a named Defendant in this matter. (ECF No. 43.)

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, No. 10–3110, 2011 WL 4469612, at *3 (6th Cir. Sept. 28, 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely

2

disputed to "cit[e] to particular parts of materials in the record").  "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute."  *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted).  In considering the factual allegations and evidence presented in a motion for summary judgment, the Court must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party."  *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate."  *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III. Analysis

**A. Claims for Declaratory and Monetary Relief**

As a preliminary matter, the Undersigned finds that Plaintiff's claims for declaratory relief are moot because he is no longer incarcerated at CRC.  *Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013) ("A prisoner's request for injunctive and declaratory relief is moot upon his transfer to a different facility.") (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).  Similarly, the Undersigned finds that Plaintiff's claims for monetary damages under the RLUIPA fail to state a claim for which relief may be granted.  As the Sixth Circuit has held, awarding "individual-capacity, money-damages . . . [under] RLUIPA [is] inappropriate."  *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014) ("We have considerable company in reaching this

conclusion.  Every circuit to consider the question . . . has held that RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities.").  The Undersigned finds, therefore, that dismissal of Plaintiff's claims for declaratory and monetary relief is appropriate pursuant to 28 U.S.C. § 1915(e).  *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997) ("Section 1915(e)(2) is applicable throughout the entire litigation process. Thus, a case that may not appear to initially meet § 1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section.").

## B.  Claims under 42 U.S.C. § 1983

Plaintiff brings his claims against Defendant under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

In order to proceed under § 1983, a plaintiff must prove both that (1) the perpetrator acted under color of state law; and (2) the conduct deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir. 1983), *rev'd and remanded sub nom*, *Brandon v. Holt*, 469 U.S. 464 (1985).  As a general rule, a plaintiff proceeding under § 1983 must allege that the deprivation of his rights was intentional or at least the result of gross negligence.  *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).  Mere negligence is not actionable under § 1983.  *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).

4

### 1. Exhaustion of Plaintiff's Administrative Remedies

In his Motion, Plaintiff argues that he is entitled to summary judgment because he exhausted his administrative remedies. (ECF No. 50 at 3-5.) The Court, however, has adopted the Magistrate Judge's finding of a genuine issue of material fact in this case with respect to whether Plaintiff exhausted his administrative remedies prior to filing this suit. (ECF No. 43 at 6.) The Undersigned finds, therefore, that Plaintiff is not entitled to summary judgment in this matter on this basis.

### 2. First Amendment and Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA") Claims

First Amendment rights, like many other rights, are circumscribed in the prison setting. In *Turner v. Safley*, 482 U.S. 78, 89 (1987), for example, the Supreme Court held that "a prison regulation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." Similarly, *Pell v. Procunier*, 417 U.S. 817, 822 (1974), holds that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Thus, review of such regulations offers a considerable degree of deference to the prison authorities, while still retaining ultimate judicial authority to evaluate the constitutional reasonableness of the regulation. *See Turner*, 482 U.S. at 89–91 (rejecting strict scrutiny). In *Turner*, the Supreme Court held that four factors are relevant in deciding whether a prison regulation affecting a constitutional right that survives incarceration withstands constitutional challenge: whether the regulation has a "valid, rational connection" to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources;

5

and whether there are "ready alternatives" to the regulation.  482 U.S., at 89–91.  If the first factor is not present, the regulation is unconstitutional, and the other factors do not matter.  *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999); *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994).  The remaining factors are considerations that must be balanced together.  *Spies*, 173 F.3d at 403 (quoting *Turner*, 482 U.S. at 90-91).

The RLUIPA requires the state to show that any substantial burden on a prisoner's religious exercise is the least restrictive means of furthering a compelling government interest.  *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005).  Courts considering RLUIPA claims must also appropriately balance the prison's need to maintain order and safety with the rights protected by the Act.  *Cutter*, 544 U.S. at 722-23.

Viewing the facts in the most favorable light to Plaintiff, the Court assumes that the grooming regulation substantially burdens Plaintiff's religious practice, and that the burdened belief is sincere.  In order to prevail, therefore, Defendant must demonstrate that the regulation in question furthers a compelling government interest and is the least restrictive method of furthering that interest.  Defendant argues that prisoners can hide dangerous contraband, such as weapons or drugs, under dreadlocks.  (ECF No. 52 at 10.)  According to Defendant, proper inspection of prisoner dreadlocks would require close proximity between inmates and the prison guards, thus creating both tension among the parties and danger to correctional staff.  (*Id*.)

The Undersigned is mindful that other courts in the Sixth Circuit have recognized that "[t]he state has a compelling interest in imposing regulations with respect to hair lengths and types due to serious safety considerations." *Johnson v. Collins*, No. 3:07-CV-211, 2009 WL 1543811 at *5 (N.D. Ohio June 2, 2009) (citation omitted).  Indeed, "[t]he ability of prison

officials to quickly identify inmates and protect prison guards and inmates from hidden contraband are matters of paramount concern." *Id.* (quoting *Phipps v. Parker*, 879 F.Supp. 734, 736 (W.D.Ky. 1995)). Prison security is a compelling government interest. *Hayes v. Tennessee*, 424 F. App'x 546, 554 (6th Cir. 2011). Accordingly, the RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Id.* (quoting *Cutter*, 544 U.S. at 722). Prison officials' determination that a regulation furthers the compelling interest in prison security, therefore, "is entitled to substantial deference by the judiciary." *Johnson*, 2009 WL 1543811 at *5 (quoting *Cutter*, 544 U.S. at 725 n.13). As the *Johnson* Court observed when adopting the Magistrate Judge's Report & Recommendation granting summary judgment to defendant:

> Important prison objectives of safety cannot reasonably be maintained without the aforementioned regulation. Alternatives, such as individualized, detailed inspection of dreadlocks would impose dangerous burdens on prison officials and inmates unlikely to ensure the removal of all contraband. The impact upon the prison resources as related to search procedures and the time spent on searching for contraband by staff is a serious consequence of invalidating the grooming regulation and undermines the interest of safety and security.

*Johnson*, 2009 WL 1543811 at *5 (internal quotes and citation omitted). The Undersigned, therefore finds prison security a compelling government interest and the grooming regulation the least restrictive means available to advance that interest in the present matter. *Cutter*, 544 U.S. at 714. Relatedly, the Undersigned finds the grooming regulation, for First Amendment purposes, is reasonably related to the government's legitimate penological interest in prison security. *Turner*, 482 U.S. at 89.

### 3.  Defendant's Qualified Immunity

Generally speaking, in Section 1983 cases, government officials performing discretionary functions are immune from liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The burden is on Plaintiff to demonstrate that an official is not entitled to qualified immunity.  *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004)). When evaluating a qualified immunity defense as a basis for summary judgment, the Court must examine two prongs (in either order): (1) whether the facts, taken in the light most favorable to Plaintiff, show that the defendant's conduct violated a constitutional right and (2) whether the constitutional right alleged to have been violated was "clearly established."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling *Katz* to the extent that *Katz* required the prongs to be analyzed in order).

As explained above, the ODRC grooming standard regulation passes constitutional muster in light of the compelling government interest in prison security.  Even if Defendant's actions violated Plaintiff's constitutional rights, however, Plaintiff still cannot show that the constitutional right in question was "clearly established."

In order to be "clearly established" for qualified immunity purposes, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2083 (2011).  The constitutional question in this case falls far short of that threshold.  The Court is unaware of any cases holding that the subject regulation violates a Rastafarian's constitutional rights.  The Court is mindful, however, that the U.S.

8

District Court for the Northern District of Ohio has upheld the ODRC's dreadlock ban in at least two cases, *Johnson* and *Curry v. Bobby*, No. 4:09-cv-614, 2009 WL 5097210 (N.D. Ohio Dec. 16, 2009).  Moreover, this Court has previously recognized that "Ohio's prison regulation regarding hair length has been upheld in the face of challenges based on the First Amendment." *Johnson v. Ohio Dep't of Rehab. & Corr.*, No. 2:08-CV-226, 2008 WL 4560757 at *3 (S.D. Ohio Oct. 9, 2008).  The Undersigned finds, therefore, that the undisputed facts in this case fail to show both that Defendant's conduct violated Plaintiff's constitutional rights and that any alleged constitutional right is "clearly established."  *Saucier*, 533 U.S. at 201.

## IV.  CONCLUSION

For the reasons explained above, the Undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED**.  (ECF No. 50.)  Furthermore, the Undersigned **RECOMMENDS** that Defendant's Second Motion for Summary Judgment be **GRANTED**. (ECF No. 52.)  It is further **RECOMMENDED** that Plaintiff's claims for declaratory relief be **DISMISSED** as **MOOT** and his claims for monetary relief be **DISMISSED** for failure to state a claim upon which relief may be granted.  (ECF No. 3.)

## <u>PROCEDURE ON OBJECTIONS</u>

If any party seeks review by the District Judge of this Report and Recommendation, it may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date: December 22, 2015                              _____/s/ *Elizabeth A. Preston Deavers*_
                                                     ELIZABETH A. PRESTON DEAVERS
                                                     UNITED STATES MAGISTRATE JUDGE